**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MASTERANK WAX, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>RFC CONTAINER, LLC, INDEVCO<br>MANAGEMENT RESOURCES, INC.,<br>DS SMITH PLC, JOHN DOE (1-10)<br>(representing unknown<br>individual defendants), and<br>ABC CORPORATION (1-<br>10)(representing unknown<br>defendant companies, parent<br>companies subsidiaries and/or<br>agents thereof)<br><br>                    Defendants. | :<br>:<br>:<br>: 1:19-cv-12245-NLH-JS<br>:<br>: **OPINION**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

APPEARANCES:

DAVID E. MAYLAND
STRASSER & ASSOCIATES
7 EAST RIDGEWOOD AVENUE
PARASMUS, NJ 07652

MAXIMILIAN RICH
STRASSER & ASSOCIATES
7 EAST RIDGEWOOD AVENUE
PARASMUS, NJ 07652

     *On behalf of Plaintiff*

ADAM EDWARD GERSH
FLASTER/GREENBERG PC
1810 CHAPEL AVENUE WEST
CHERRY HILL, NJ 08002

DANIEL ERIC GORMAN
TROUTMAN SANDERS LLP
875 THIRD AVENUE
NEW YORK, NY 10022

ERIC ROBERT CLENDENING
FLASTER/GREENBERG PC
1810 CHAPEL AVENUE WEST
CHERRY HILL, NJ 08002

    *On behalf of Defendants.*


**HILLMAN**, District Judge

    Plaintiff, Masterank Wax, Inc., filed a seven-count complaint against Defendants, RFC Container, LLC, Indevco Management Resources, Inc., and DS Smith, Plc in May 2019. Defendant RFC Container, LCC brought four counterclaims against Masterank Wax, Inc. in August 2019.  Presently before the Court is RFC Container, LLC's motion to dismiss counts one and four of Masterank Wax, Inc.'s complaint and Masterank Wax, Inc.'s motion dismiss all four counterclaims.  For the reasons stated below, the Court will grant RFC Container, LLC's motion and deny Masterank Wax Inc's motion.

## Background

    Plaintiff, Masterank Wax, Inc. ("Masterank"), is a business involved in shipping wax products.  Masterank is a California corporation with its principal place of business in Pittsburg, California.  In 2014, Masterank began delivering shipments of

paraffin wax to RFC Container, LLC ("RFC").  RFC is in the business of producing containers, including specialty containers, and coated containers used for storage of seafood and fresh produce.  RFC is a limited liability company established under the laws of Delaware with its principal place of business in Vineland, New Jersey.

RFC is held by Indevco Management Resources, Inc. ("IMRI"). IMRI is a corporation incorporated under the laws of Delaware with its principal place of business in Arlington, Virginia.  DS Smith, Plc ("DS Smith") is a subsidiary of IMRI.  DS Smith is a British Public Limited Company organized under the laws of the United Kingdom with its principal place of business in London, England.

When Masterank and RFC entered into an agreement in 2014, Masterank assigned a dedicated salesperson to communicate with RFC.  Until May 2016, Masterank and RFC agree that Masterank shipped multiple deliveries of wax to RFC in Vineland, New Jersey and RFC made multiple payments for these deliveries. Masterank alleges that this functioning agreement stopped in May 2016 when it sent four shipments of paraffin wax to RFC but did not receive payment.  Masterank alleges it shipped another two shipments of paraffin wax to RFC in June 2016 and did not receive any payments.  Finally, Masterank alleges that it sent a

further two shipments of paraffin wax to RFC in July 2016 and never received payment.

In May 2019, Masterank filed its first amended complaint in the District of New Jersey alleging seven counts against RFC, IMRI and DS Smith.  These counts are: (1) negligence; (2) breach of contract; (3) unjust enrichment; (4) fraud; (5) book account; (6) quantum meruit; and (7) indebtedness.

On August 14, 2019, RFC brought a number of counterclaims against Masterank.  These counterclaims included: (1) breach of contract; (2) breach of warranty; (3) promissory estoppel; (4) unjust enrichment.

RFC alleged that Masterank's pricing was meant to be inclusive of all costs, as is the industry standard.  RFC further alleged that Masterank had employed "net-invoicing" practices, under which it had assumed responsibility for all added costs, including fees and taxes assessed on gross receipt of wax purchases.  According to RFC, this is also industry standard.

RFC further asserts that despite Masterank's continuous and repetitious contacts with New Jersey, it did not register with the state of New Jersey and did not pay New Jersey Petroleum Gross Receipts Taxes ("PGRT").  RFC Container contends that it was subject to a random state audit, during which it was assessed PGRT plus interest and penalties.  In total, RFC

contends the amount of PGRT, interest, and penalties exceeded one million dollars.

RFC further alleges that when it raised this issue with Masterank, Masterank acknowledged liability and offered to give RFC a discount on future wax purchases to compensate RFC for its loses.  However, before RFC could take advantage of this discount, RFC alleges that it discovered that Masterank had shipped contaminated wax.  According to RFC, Masterank acknowledged that this wax was contaminated and promised to send alternate wax.  RFC alleges that though Masterank was able to secure alternate wax, it chose not to send it because Masterank would then have to honor its discount agreement.  RFC alleges that it relied on this misrepresentation from Masterank and suffered significant damages as a result.

On August 14, 2019, RFC filed a motion to dismiss Counts One (Negligence) and Four (Fraud) of Masterank's First Amended Complaint.  Masterank filed its brief in opposition to RFC's motion to dismiss on September 3, 2019.  Masterank contested the motion to dismiss with respect to its fourth claim, but did not contest the motion to dismiss with respect to its first claim.

On September 4, 2019, Masterank filed its own motion to dismiss RFC's counterclaims.  These matters have been fully briefed and are ripe for adjudication.

## Discussion

A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because complete diversity exists among the parties to this suit and the value of the rights sought to be protected exceeds $75,000.

Venue is proper under 28 U.S.C. § 1391(b)(2).

B. Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Philips v. Cnty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

When weighing a motion to dismiss, the Court does not ask "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n. 8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'") (citations omitted).

In applying the Twombly/Iqbal standard, a district court will first "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678).  Next, the Court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 211 (citing Iqbal, 556 U.S. at 679).

To meet this standard, a "complaint must do more than allege the plaintiff's entitlement to relief."  Id.; see also Philips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of'

the necessary element.") (citing Twombly, 550 U.S at 556).  The

party moving to dismiss under 12(b)(6) "bears the burden of

showing that no claim has been presented."  Hedges, v. United

States, 404 F.3d 744, 750 (3d Cir. 2005).

   C. Standard under Fed. R. Civ. P. 9(b)

     Federal Rule of Civil Procedure 9(b) imposes a heightened

pleading standard on fraud-based claims.  This rule provides

that "[i]n alleging fraud or mistake, a party *must state with

particularity* the circumstances constituting fraud or mistake."

Fed. R. Civ. P.9(b) (emphasis added).  The 9(b) standard is

independent of the standard applicable to motions made under

12(b)(6).  Cal. Pub. Employees Ret. Sys. V. Chubb Corp., 394

F.3d 126, 144 (3d Cir. 2004).  Because of this difference in

standards, plaintiffs may not benefit from the same inferences

they enjoy under a 12(b)(6) analysis if they fail to meet the

heightened pleading requirements.  See id. at 156.

     Rule 9(b) does not "requir[e] every material detail of the

fraud, such as date, location, and time" but "plaintiffs must

use alternative means of injecting precision and some measure of

substantiation into their allegations of fraud."  In re

Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d

Cir. 2002) (internal quotation marks omitted).  The purpose of

this requirement is to "place the defendant on notice of the

precise misconduct with which is it charged."  Frederico v. Home

Depot, 507 F.3d 188, 200 (3d Cir. 2007).  Courts will be

"sensitive to situations in which sophisticated defrauders may

successfully conceal the details of their fraud" and relax the

rigid requirements of Rule 9(b) as appropriate.  In re

Rockefeller, 311 F.3d at 216 (citing In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997)).

Nevertheless, even in cases where the defendant "retains control

over the flow of information, 'boilerplate and conclusory

allegations will not suffice.  Plaintiffs must accompany their

legal theory with factual allegations that make their

theoretically viable claim plausible.'" Id. (quoting In re

Burlington, 114 F.3d at 1418).

   D. Economic Loss Doctrine

     The economic loss doctrine "defines the boundary between

the overlapping theories of tort law and contract law by barring

the recovery of purely economic loss in tort."  Peters v.

Countrywide Home Loans, Inc., 2016 WL 2869059, at *4 (D.N.J.

2016) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d

238, 244 (3d Cir. 2010)).  The rationale for this doctrine is

that "[t]ort principles . . . are better suited for resolving

claims involving unanticipated injuries, and contract principles

are generally more appropriate for determining claims for

consequential damages that parties have or could have

address[ed] in their agreement."  Id.

 The economic loss doctrine does not bar claims for fraud in

the inducement of a contract.  Id. (citing Bracco Diagnostics

Inc. v. Wynn Environmental Sales Co., 2018 WL 3455479, at *3

(D.N.J. 2018)); see also Wilhelm Ruess GmbH & Co. KG,

Lebensmittel Werk v. E. Coast Warehouse & Distrib. Corp., 2018

WL 3122332, at *5 (D.N.J. 2018) ("A well-settled exception to

the economic loss doctrine is fraud in the inducement of a

contract or an analogous situation based on pre-contractual

misrepresentations.").  When assessing whether this exception

applies, courts "distinguish between claim intrinsic to the

contract, which are barred by the doctrine, and claims extrinsic

to the contract, which are not barred by the doctrine."  Id.

(quoting Ribble Co. v. Burkert Fluid Control Sys., 2016 WL

6886869, at *3 (D.N.J. Nov. 22, 2016)).  A claimant relying on

this exception must allege that the "underlying allegations

involve misrepresentations unrelated to the performance of the

contract, but rather precede the actual commencement of the

agreement."  Id. (quoting State Capital Title & Abstract Co. v.

Pappas Bus. Servs. LLC, 646 F.Supp.2d 668, 676 (D.N.J. 2009)).

  E. Masterank's Claims

 Because Masterank did not contest RFC's motion to dismiss

its first count of negligence, the Court will consider this

count dismissed with prejudice.  The Court will now consider
whether to dismiss Masterank's fourth count for fraud.  For the
reasons stated below, the Court will grant RFC's motion to
dismiss this claim.

Masterank alleges that RFC knew that it had received and
was keeping eight shipments of wax over a period of three
months.  Masterank further alleges that RFC knew that these
shipments were valued at approximately $255,371.10.  According
to Masterank, RFC retained these shipments of wax despite never
intending to pay for them.  Masterank alleges that this
intentional conduct induced Masterank into sending more wax,
based on the belief that RFC would pay for the deliveries it
received.

RFC contends that this claim should be dismissed because it
failed to state a claim of fraud with adequate specificity and
this claim is barred by the economic loss theory.  The Court
finds that Masterank's claim was stated with adequate
specificity but is nonetheless barred by the economic loss
theory.

Masterank has not merely relied on boilerplate or
conclusory allegations of fraud.  Masterank included details
about the shipments it alleges were subject to RFC's fraudulent
retainer, including the dates, location, and quantity of its
shipments.  Taking into account the level of detail alleged by

Masterank, RFC has adequate notice of the conduct with which it has been charged.  The Court finds that Masterank has met the heightened pleading standard under Federal Rule of Civil Procedure 9(b).

However, Masterank's claim of fraud concerns anticipated consequential damages that could have been addressed by its agreement with RFC.  The Court finds Masterank's claim of fraud is intrinsic to the contract and therefore barred by the economic loss theory.  Masterank has failed to allege that the RFC's misrepresentations were unrelated to the performance of the contract.  Instead, Masterank is alleging that RFC represented that it would perform its end of the contract by making payments and failed to do so.

The Court will dismiss Masterank's fourth count for fraud because the claim is barred by the economic loss theory.

F. RFC's Counterclaims

When considering Masterank's motion to dismiss RFC's counterclaims, the Court will accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the RFC.  See Evancho, 423 F.3d at 350. Masterank bears the burden of showing that RFC Container has failed to present a claim.  See Hedges, 404 F.3d at 750.  The Court will deny Masterank's motion to dismiss.

Counterclaim 1: Breach of Contract

The Court finds that RFC has included enough factual matter to suggest the required elements of a breach of contract claim. See Philips, 515 F.3d at 234.  To make a claim for breach of contract at this point, RFC must allege "(1) a contract between the parties; (@) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  Frederico, 507 F.3d at 204.

RFC has alleged that Masterank and RFC negotiated terms of an agreement for paraffin wax.  RFC further alleges that Masterank breached this agreement by failing to pay New Jersey PGRT.  RFC also plead that as a result of this failure to pay New Jersey PGRT, RFC had to pay over one million dollars in PGRT, interest, and penalties.  Finally, RFC alleges that it performed its contractual obligations by purchasing the wax from Masterank.

The Court finds that RFC has adequately stated a claim for breach of contract.  The Court will deny Masterank's motion to dismiss with respect to this counterclaim.

Counterclaim 2: Breach of Warranty

In Cooper v. Samsung Electronics America Inc., 374 Fed.Appx.250, 253 (3d Cir. 2010) the Third Circuit applied the same standard from Frederico to a breach of express warranty

claim.   The Court finds that RFC has stated a claim for breach

of warranty.   The Court will deny Masterank's motion to dismiss

with respect to this counterclaim.


Counterclaim 3: Promissory Estoppel

     To sustain a claim for promissory estoppel, RFC must allege

four elements of promissory estoppel: "(1) a clear and definite

promise; (2) made with the expectations that the promise will

rely on it; (3) reasonable reliance; and (4) definite and

substantial detriment."   Scagnelli v. Schiavone, 538 Fed.Appx.

192, 194 (3d Cir. 2013).

     RFC has alleged that it discussed payment of the PGRT with

Masterank.   At this time, RFC alleges that Masterank

acknowledged its liability for the PGRT and offered to give RFC

a discount on future purposes.   RFC contends that it reasonably

relied on this promise by not seeking recovery for the damages.

RFC further alleges that it discussed the contaminated wax with

Masterank.   At this time, RFC alleges that Masterank

acknowledged that the wax was contaminated and offered to

provide alternate wax.   RFC contends that it reasonably relied

on this promise and suffered damages as a result.

     Masterank contends that RFC has failed to allege that there

was a "clear and definite promise" between the two parties.

This Court has previously recognized that New Jersey courts

"increasingly 'relax the strict adherence' to a heightened standard of proof for the 'clear and definite promise' element of a promissory estoppel claim."  Stewart v. Greyhound Lines, Inc., 2012 WL 1530, at *3 (D.N.J. Jan. 4, 2012) (citing Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 307 N.J.Super. 461, 469 (App.Div. 1998)).

The Court finds that the promises to provide a discount and to secure alternate wax are sufficiently pleaded to state a claim for promissory estoppel.  The Court will deny Masterank's motion to dismiss with respect to this counterclaim.

Counterclaim 4: Unjust Enrichment

A cause of unjust enrichment "requires proof that the defendants received a benefit and that retention of that benefit without paying would be unjust."  Ciser v. Nestle Waters North America Inc., 596 Fed.Appx. 157, 160 (3d Cir. 2015).

RFC alleged that it purchased wax from Masterank.  RFC alleged that Masterank did not pay New Jersey PGRT for any of the wax products that it sold to RFC.  RFC was then subject to a random state audit and was assessed the PGRT, interest, and penalties.  In sum, RFC alleges that because Masterank failed to fulfill its promises to RFC to pay the PGRT, Masterank has been unjustly enriched at the expense of RFC.

The Court finds that RFC has stated a claim for unjust enrichment.  The Court will deny Masterank's motion to dismiss with respect to this counterclaim.

## Conclusion

For the reasons stated above, the Court will grant RFC's motion to dismiss counts one and four of Masterank's complaint and deny Masterank's motion to dismiss RFC's counterclaims.

An appropriate order will be entered.


Date:   May 27, 2020___                _s/ Noel L. Hillman_____
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.