UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MASTERANK WAX, INC.,

        Plaintiff,

v.

RFC CONTAINER, LLC, *et al.*,

        Defendants.

Civil Action

No. 1:19-CV-12245-KMW-MJS

**OPINION**

**David E. Maryland, Esq.**
**Maximilian Rich, Esq.**
STRASSER & ASSOCIATES, P.C.
7 East Ridgewood Avenue
Paramus, NJ 07652

*Counsel for Plaintiff Masterank Wax, Inc.*

**Adam E. Gersh, Esq.**
**Eric R. Clendening, Esq.**
FLASTER/GREENBERG PC
1810 Chapel Avenue West
Cherry Hill, NJ 08002

**Daniel E. Gorman, Esq.**
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022

*Counsel for Defendants RFC Container, LLC; Indevco Management Resources, Inc.; and DS Smith PLC*

## I. INTRODUCTION

This matter comes before the Court by way of plaintiff Masterank Wax, Inc.'s ("Masterank" or "Plaintiff") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Therein, Masterank seeks the entry of summary judgment with respect to (1) its claim for breach of contract against defendant RFC Container, LLC ("RFC" or "Defendant"); and (2) each of RFC's four counterclaims asserted against it for breach of contract, breach of warranty,

1

promissory estoppel, and unjust enrichment. RFC has opposed Masterank's Motion. For the reasons articulated below, Masterank's Motion is granted.

## II. BACKGROUND

Masterank is a California corporation engaged in the business of selling and shipping wax products. *See* Masterank's Statement of Undisputed Material Facts ("Pl.'s SMF") ¶¶ 2–3. RFC is a New Jersey limited liability company that manufactures various wax-coated containers.[1] *See id.* ¶¶ 1, 4. Between 2005 and 2016, RFC purchased wax from Masterank for use in its container products. *See id.* ¶ 5. The parties' relationship was never organized around any formal, written agreement for sale, but rather occurred on an order-by-order basis. *See id.* Specifically, RFC would place orders with a Masterank sales representative for specific quantities of wax, which were then memorialized by a corresponding sales order sheet and subsequently delivered to RFC in Vineland, New Jersey. *See id.* 5–9. Masterank would then issue an invoice to RFC reflecting the amount of wax that was delivered. *See, e.g.*, Pl.'s Ex. Z (ECF No. 95-4 at 165.)

### A. Masterank's Claim for Unpaid Invoices

The parties' relationship effectively ended in 2016 after RFC began to halt payments on invoices for wax products that it had ordered and accepted. *See* Pl.'s SMF ¶ 19. Between May 23, 2016, and June 2, 2016, RFC placed eight orders with Masterank for paraffin wax in various quantities. *See* Pl.'s Ex. Z (ECF No. 95-4 at 160–204.) Masterank fulfilled each of these orders, which RFC subsequently received and accepted without issue. *See* Pl.'s SMF ¶ 19. Notwithstanding the apparent success of these shipments, RFC refused to pay the invoices owing

---

[1] RFC is held by Indevco Management Resources, Inc. ("IMRI"), a business incorporated under the laws of Delaware and with a principal place of business in Arlington, Virginia. DS Smith, Plc ("DS Smith") is a subsidiary of IMRI. DS Smith is a British Public Limited Company organized under the laws of the United Kingdom and with its principal place of business in London, England.

on them. *See id.* In total, these unpaid invoices amount to $255,371.10. *See id.* ¶ 21; *see also* Pl.'s Ex. Z (ECF No. 95-4 at 165, 170, 176, 182, 188, 192, 198, 204.)

Seeking payment on these outstanding invoices, Masterank initiated the instant action against RFC in May 2019, asserting claims for breach of contract, unjust enrichment, book account, quantum meruit, and indebtedness.[2]

### B. RFC's Defenses and Counterclaims

RFC does not deny that it ordered, received, and accepted these eight wax shipments. Nor does it deny refusing to pay Masterank's invoices for the same.[3] Rather, RFC affirmatively defends its non-payment on various grounds, all of which invariably form the bases of the four counterclaims it has since asserted against Masterank.

#### 1. *2014 Defective Wax*

First, RFC claims that at some unspecified time between June and September of 2014, Masterank shipped "defective" wax to RFC. *See* RFC's Statement of Disputed Material Facts ("Def.'s SDMF") ¶ 11. RFC maintains that this wax not only caused certain undescribed "product failures" with its containers, but that it had also "contaminated" four of its wax-storage tanks. *Id.* ¶ 12. As damages, RFC describes costs it allegedly incurred from having to (1) destroy its inventory that was potentially contaminated by the defective wax; (2) offer "material concessions" to unnamed customers for the "defective products" that were manufactured using such wax; (3)

---

[2] Counts I and IV of Masterank's Amended Complaint also asserted claims for negligence and fraud, respectively. Those claims, however, were eventually dismissed by District Judge Noel L. Hillman under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 43.)

[3] RFC comptroller Thomas Dunphy testified that he was instructed by one of RFC's principals, namely Thomas Russo, to withhold payment on these invoices so that RFC could "have leverage" against Masterank in connection with a separate, unrelated dispute concerning the payment of New Jersey petroleum taxes. *See* Thomas Dunphy Dep. Tr. at 40:3–15. (ECF No. 95-4 at 75.)

purchase replacement wax; and (4) "devote resources to cleaning out RFC's machinery to remediate the effect of the defective wax." *Id.* ¶ 16.[4]

RFC further claims that it "brought this [issue] to the attention of Masterank" and that Masterank never "issue[d] a refund or credit." *Id.* ¶ 15. Masterank denies that it had ever shipped defective wax to RFC, and further claims that it was not made aware of any purported quality issues until after it had initiated this collection action against RFC. *See* Pl.'s Resp. to Def.'s SDMF ¶ 11.

### 2. *2016 Supply Disruption*

Second, RFC claims that it also suffered damages in 2016 after it was unable to place any wax orders with Masterank "for several months." *See* Def.'s SDMF ¶ 28. Specifically, RFC claims that in or around May 2016, Masterank informed RFC that it was experiencing an "oxidized wax issue," and that it would not accept any future orders from RFC. *See id.*; *see also* Def.'s Ex. B, Timothy Brooking Dep. Tr. at 34:18–35:1 (ECF No. 98-4 at 4.) And although RFC subsequently had its wax needs fulfilled by a separate vendor, it claims that it ended up spending "more per pound" than it otherwise would have had Masterank been in a position to fulfill its purchase orders. *See* Def.'s SDMF ¶ 29.

### 3. *2016 Tax Settlement*

Lastly, RFC claims that Masterank is liable for an amount of taxes it was compelled to pay to the New Jersey Department of the Treasury's Division of Taxation (the "Tax Division"). In 2016, the Tax Division subjected RFC to an audit due to its failure to pay taxes on any wax shipments it had received from certain of its suppliers, including Masterank, between 2002 and

---

[4] Glaringly, the only evidence that RFC cites to support any of these allegations is a five-page declaration from its principal, Thomas Russo, which it attaches to its Opposition to Masterank's Motion. *See* Def.'s SDMF ¶¶ 11–16.

2016. *See* Pl.'s SMF ¶ 23; *see also* Pl.'s Ex. K (ECF No. 95-4 at 136.) Specifically, the Tax Division sought payment for unpaid taxes arising under the New Jersey Petroleum Products Gross Receipts Tax Act (the "PPGRTA").

Prior to its amendment in 2016, the PPGRTA imposed two discreet types of taxes on various petroleum-based products, including paraffin wax. *See* N.J. STAT. ANN. § 54:15B-3.[5] The first, the "Distribution Tax," was imposed on certain companies who sold and distributed wax products within the State of New Jersey. *See id.* § 54:15B-3a. The Distribution Tax was typically imposed on wax sellers, such as Masterank, and was calculated by applying a pre-determined percentage to the gross receipts that arose out of the "first sales" of wax made during a particular quarter. *See id.* In addition to the Distribution Tax, the PPGRTA also imposed a separate tax on companies, like RFC, who purchased and imported wax products to the state (the "Use Tax"). *See id.* § 54:15B-3b. The statute also contained various exceptions, one of which allowed importers to be exempted from paying the Use Tax, but only when they were simultaneously subject to and having already paid the Distribution Tax on the same wax products. *See id.*

On March 16, 2016, RFC wrote to the Tax Division offering various arguments as to why it should not be held liable for any PPGRTA taxes at all. *See* Pl.'s Ex. P (ECF No. 95-4 at 92–98.) To the extent the Tax Division sought to hold RFC liable for any unpaid Distribution Taxes, RFC pointed out that it was not a distributor that collected gross receipts on any wax, and that the responsibility to pay any such taxes lied with their vendors, including Masterank. *See id.* (ECF No. 95-4 at 93–94.) Insofar as the Tax Division sought payment for unpaid Use Taxes, RFC argued that it was exempted from this as well because it "applies only to imports from companies not subject to the [Distribution] Tax." *Id.*

---

[5] For purposes of this Opinion, the Court cites to the pre-amended version of the PPGRTA effective between June 30, 2000, and October 13, 2016.

Presumably, the Tax Division was unpersuaded by RFC's correspondence, as it ultimately assessed against it "an amount exceeding one million dollars" for unpaid taxes. *See* Def.'s SDMF ¶ 22; *see also* Pl.'s SMF ¶ 25. Ultimately, on July 25, 2016, RFC agreed to settle its dispute with the Tax Division, issuing a single payment in the amount of $840,000. *See* Pl.'s SMF ¶ 35; *see also* Pl.'s Ex. S (ECF No. 95-4 134–139.)

Curiously, RFC does not disclose whether the Tax Division found it to be liable for unpaid Distribution Taxes or Use Taxes.[6] Rather, it conflates and refers to both as a single "Petroleum Gross Receipts Tax" or "PGRT." *See, e.g.*, Def.'s SDMF ¶¶ 20–27. However, at least one correspondence from the Tax Division strongly suggests that RFC was specifically audited for and assessed unpaid Use Taxes. *See* Pl.'s Ex. O (ECF No. 95-4 at 87.) But given that RFC does not readily appear to be a distributor that collected gross receipts under the PPGRTA—and that RFC does not otherwise dispute Masterank's contention that it was indeed subject to Use Tax[7]—the Court will presume for purposes of this Opinion that RFC's settlement payment was for unpaid Use Taxes.

To date, it does not appear that the Tax Division has ever subjected Masterank to an audit or otherwise determined that Masterank had failed to pay any outstanding Distribution Taxes arising out of its shipments to RFC during the parties' eleven-year relationship. *See* Pl.'s SMF ¶ 25.[8] Nevertheless, RFC seeks to hold Masterank liable in this case for the amount of its tax

---

[6] Equally curious is the fact that the tax delinquency RFC settled, as evidenced by its settlement agreement with the Tax Division, began in January 2002—three years before RFC ever began dealing with Masterank. *See* Pl.'s Ex. S (ECF No. 95-4 at 136.)

[7] *See* Pl.'s Br. at 4–5; *see also* Pl.'s Reply at 29–30.

[8] In its Opposition, RFC claims that the Tax Division separately informed it that "Masterank was subject to the PGRT because of its nexus with New Jersey, but that it could also impose the tax on RFC directly due to Masterank's failure to pay it." Def.'s SDMF ¶ 23. This is a gross and rather dishonest misrepresentation of the record. What RFC actually refers to is a General Guidance Letter issued by the Tax Division on May 18, 2021, which speaks to the obligations of a hypothetical, out-of-state wax distributor to pay Distribution Taxes under § 54:15B-3a of the pre-

settlement, offering rationales that are not entirely dissimilar to those that it had previously argued to the Tax division.

### C. Masterank's Motion for Summary Judgment

Following the close of discovery, Masterank filed the instant Motion seeking the entry of summary judgment only with respect to its breach of contract claim against RFC for the eight unpaid invoices. In addition, Masterank also seeks summary judgment on RFC's counterclaims for breach of contract, breach of warranty, promissory estoppel, and unjust enrichment—each of which seeks to recover damages related to either the 2014 defective wax shipment, the 2016 supply disruption, or its 2016 settlement with the Tax Division. As RFC has opposed the entry of summary judgment, Masterank's Motion is ripe for disposition.

## III. STANDARD OF REVIEW

A court may grant summary judgment when the materials of record "show[ ] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law.").

---

amended version of the PPGRTA. *See* Def.'s Ex. C (ECF No. 98-5 at 2–6.) Importantly, this letter—which appears to have been solicited by RFC's counsel specifically for use in this litigation—says nothing about the parties' respective tax liabilities. But even if RFC had accurately disclosed the letter and argued that Masterank was similarly situated to this fictitious entity, the Tax Division explicitly stated in its letter that this guidance could not be used as precedent "for any other matter or person in a similar situation." *Id.* (ECF No. 98-5 at 6.)

Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.''" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.   DISCUSSION

Before addressing the merits of the claims and counterclaims subject to Masterank's Motion, the Court first registers the parties' apparent agreement that their prior dealings—and consequently most of their claims—are governed by Article II of the Uniform Commercial Code (the "UCC"), as adopted in New Jersey. *See* N.J. STAT. ANN. §§ 12A:2-101 *et seq.*

### A. Masterank's Breach of Contract Claim

The Court first addresses Masterank's Motion concerning its breach of contract claim for the unpaid invoices. Within the context of the UCC, Masterank's claim—although styled as a

claim for breach of contract—is in fact an action to recover the price of goods under UCC § 2-709. *See* N.J. STAT. ANN. § 12A:2-709; *see also Mack Boring & Parts Co. v. Novis Marine, LTD*, No. 06-2692, 2008 WL 4371769, at *8 (D.N.J. Sept. 18, 2008) (construing seller's contract claim for unpaid invoices as one for the recovery of the price of goods under § 2-709).

In its Motion, Masterank points out that RFC has refused to pay for wax that it ordered and accepted, and that it is accordingly entitled to payment for the same. RFC admits its non-payment, but asserts that it was effectively excused from paying the invoices due to the other damages it has alleged. Glaringly, RFC cites to no authority or offers any legally relevant explanation as to how such damages entitled it to withhold payment on these invoices.

The UCC is remarkably straightforward, and has long made clear that a "buyer must pay at the contract rate for any goods accepted." N.J. STAT. ANN. § 12A:2–607(1); *see also id.* § 12A:2–709(a) (entitling sellers of goods to "recover, together with any incidental damages . . . the price [of] [the] goods accepted" by the buyer). Simply stated, "[i]f a buyer does not contest that it accepted goods it purchased from the seller, the buyer must pay the contract price." *Mack Boring & Parts Co.*, 2008 WL 4371769, at *8.

Here, it is undisputed that RFC failed to pay the invoices for eight shipments of wax that it had ordered, received, and accepted. RFC does not dispute the conformance or quality of the wax it received. Nor does it quarrel with the accuracy of Masterank's invoices.[9] Under these

---

[9] UCC § 2-717 does, in limited circumstances, recognize a buyer's right to "deduct all or any part of the damages resulting from any breach of the contract." N.J. STAT. ANN. § 12A:2–717. However, that right may only be properly exercised when the seller's supposed breach occurred in connection with transactions that are part of the *same* contract. *See Ning Shing (U.S.A.), Inc. v. Howard Berger Co.*, No. 97-604, 1998 WL 684244, at *4 (D.N.J. Mar. 16, 1998) (observing that the UCC does not grant buyer right to setoff previous losses suffered in connection with separate purchases). Here, there is nothing in the record to suggest that the breaches Masterank allegedly committed were in any way related to these eight wax orders. In any case, RFC has not invoked § 2-717. But even if it had, it would not preclude the entry of summary judgment in Masterank's favor. *See Mack Boring & Parts Co.*, 2008 WL 4371769, at *8 (granting summary judgment and awarding plaintiff the price for goods "even though the defendant could be entitled to a setoff or recoupment if it were successful on its counterclaim[s]" (internal quotation marks omitted)).

circumstances, the UCC protects Masterank's right to payment for the price of the wax, and its Motion for the same is accordingly granted.[10] *See Phibro Animal Health U.S., Inc. v. Cornerstone AG Products*, 271 F. App'x 214, 215 (3d Cir. 2008) (affirming grant of summary judgment in favor of seller where buyer refused to pay for goods in spite of its prior receipt and acceptance of the same); *see also Electro–Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1456 (D.N.J. 1984) (granting summary judgment in favor of the seller where buyer did not dispute that "the goods were delivered, that the invoice price accurately reflect[ed] the price for the goods and that the goods ha[d] not been rejected or returned").[11]

### B. Counterclaim I—Breach of Contract[12]

The Court now addresses Masterank's Motion with respect to RFC's counterclaims, beginning first with its claim for breach of contract. To prevail on a contract claim under New Jersey law, a plaintiff must prove "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship

---

[10] In light of this disposition, the Court suspects that Plaintiff has no reason to proceed with its remaining claim for unjust enrichment, or any of its claims against IMRI or DS Smith. However, because Masterank has not moved with respect to these other claims, the Court cannot, and does not, resolve them at this time.

[11] Insofar as Masterank also seeks an award of attorneys' fees and costs pursuant to the terms and conditions governing RFC's purchases in 2016, Masterank is instructed to seek such relief by way of a separately filed motion pursuant to Federal Rule of Civil Procedure 54 and Local Civil Rule 54.2.

[12] Concerning its counterclaims, RFC's Opposition broadly concludes that the instant Motion fails on all fronts because Masterank "fails to introduce undisputed evidence showing," among other things, that RFC was "not forced to secure alternate wax at a financial loss." Def.'s Opp. Br. at 14. It also suggests that Masterank "would need to prove" certain factual propositions opposite to those RFC purports to marshal. *Id.* RFC has clearly misapprehended both its burden and the well-settled principles governing motions for summary judgment. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (observing the non-movant's burden to "come forward with 'specific facts showing that there is a genuine issue for trial.'"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that a summary judgment movant need not "support its motion with affidavits or other similar materials negating the opponent's claim"); *Jovic v. Legal Sea Foods, LLC*, No. 2:16-CV-01586, 2018 WL 5077900, at *3 (D.N.J. Oct. 18, 2018) ("[A] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial." (quotation marks omitted)).

between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Loc. Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).

Here, RFC's counterclaim is premised on three, distinct theories of liability. The Court addresses each in turn.

1. *2014 Defective Wax*

First, RFC claims that Masterank breached some contract when it shipped defective wax to RFC in 2014. RFC has not identified any specific wax shipment or purchase order. Nor has it provided any documentary evidence demonstrating either the allegedly defective wax or its damages. Nor does it describe how precisely it determined that any defective wax was attributable to Masterank. In its Motion, Masterank denies ever sending RFC defective wax, but argues that, even if it had, any claim for breach of contract arising out of the same would be barred by the UCC's four-year statute of limitations; the Court agrees.

Section 2-725 of the UCC provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.J. STAT. ANN. § 12A:2-725(1). A breach of contract claim "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 12A:2-725(2); *see also Talon Indus., LLC v. Rolled Metal Prod., Inc.*, No. 15-4103, 2022 WL 3754800, at *6 (D.N.J. Aug. 30, 2022) ("New Jersey courts do not toll the statute of limitations pursuant to the discovery rule for UCC contract claims."). As RFC filed its counterclaim on August 14, 2019, any contract-based claim for defective wax must have accrued on or after August 14, 2015. Thus, RFC's counterclaim for defective wax it allegedly received between June and September of 2014 is necessarily time-barred.

Apparently recognizing that its time has run out, RFC's Opposition claims that its contract counterclaim was never premised on any defective wax shipments from 2014, and that it had rather cited to that defective shipment only "as evidence for an offset and defense to Masterank's [ ] breach of contract claim." Def.'s Opp. Br. at 15.[13] In a rather obvious attempt to circumvent the statute of limitations and thwart summary judgment, RFC now claims—for the very first time in this litigation—that it received *another* shipment of defective wax from Masterank at some unspecified time in 2016. The Court is neither impressed nor persuaded by RFC's last-ditch attempt to reinvent its counterclaim and move it beyond the UCC's time bar. *See Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 862 n.10 (D.N.J. 2019) ("New theories of liability set forth in responsive papers to a motion for summary judgment are generally considered 'too late' and thus, do not create genuine issue of material fact to preclude summary judgment." (quotation marks omitted)); *see also Laurie v. Nat'l Passenger R.R. Corp.*, 105 Fed. Appx. 387, 392–93 (3d Cir. 2004) (reiterating that new claims may not be raised for the first time in opposition to a motion for summary judgment); *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 n.5 (D.N.J. 2008) (declining to consider new breach of contract claim on summary judgment when plaintiff failed to plead that "particular claim" in the complaint); *Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *19 (D.N.J. June 27, 2019) ("Opposition to summary judgment is not the appropriate vehicle to insert new claims.").

RFC's retreat from its counterclaim cannot be construed as anything else but a concession of its untimeliness and a consequent abandonment of the same. *See Damiano v. Sony Music Ent.,*

---

[13] First, the notion that Masterank never intended to premise its counterclaims on its 2014 losses is simply false. Indeed, following intervention by this Court—and having been compelled twice to clarify the damages it sought to pursue in this litigation—RFC at last made clear that its claim for damages arose out of an allegedly defective shipment of wax it received "between June and September 2014." See RFC's Second Supp. Initial Disclosures (ECF No. 95-4 at 152.) What is more, perhaps RFC's representation here would be somewhat more believable had it bothered to even reference its 2014 financial losses in the portion of its Opposition that specifically addresses Masterank's breach of contract claim.

*Inc.*, 975 F. Supp. 623, 637 (D.N.J. 1996) (deeming inconsistently asserted claims abandoned on motion for summary judgment) ("Claims in litigation are not fungible items to be abandoned and revived at will, rendering plaintiff's theories a moving target."). Accordingly, Masterank's Motion is granted.

### 2. *2016 Supply Disruption*

Next, RFC claims that Masterank "agreed" to either (1) "supply wax to it a discounted rate," or (2) "cover RFC's additional expenses incurred by having to secure wax from an alternative vendor," and that it subsequently breached its agreement when it failed to provide either. *See* Def.'s Opp. Br. at 15.[14] However, there is simply no record evidence supporting the existence of a valid, binding, and enforceable contract.

At a most basic level, an enforceable contract is one that "consists of an offer, acceptance and consideration." *Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 116 (D.N.J. 2007).[15] Here, the only record evidence RFC has pointed to for the existence of such an agreement is the deposition testimony of a Masterank sales representative stating that RFC had "ask[ed] for a credit" or "some sort of price adjustment" following the complained-of supply disruption, but that Masterank subsequently declined to extend either. *See* Def.'s Ex. B, Timothy Brooking Dep. Tr. at 37:14–24 (ECF No. 98-4 at 4); *see also* Def.'s SDMF ¶ 32 (stating that "Tim

---

[14] To be clear, RFC does not claim that Masterank failed to make a delivery or otherwise repudiated a pre-existing purchase order, as contemplated by UCC § 2-711. *See* N.J. STAT. ANN. § 12A:2-711 (delineating a buyer's remedies when a seller "fails to make delivery or repudiates"). Nor does it argue that § 2-712 entitled it to "cover" or otherwise recover damages arising out of such cover. *See* N.J. STAT. ANN. § 12A:2-712 (entitling a buyer to cover and damages when a seller commits a breach under § 2-711).

[15] Separately, the Court notes that the UCC also contains its own provisions concerning the formation and terms of contracts for the sale of goods. *See, e.g.*, N.J. STAT. ANN. § 12A:2-201–210. But here too, RFC does not acknowledge any of them.

Brooking from Masterank *discussed* a credit for RFC" (emphasis added)). Clearly, Masterank never made the promises RFC claims.

Because RFC has failed to demonstrate the existence of a valid, binding, and enforceable contract, summary judgment is warranted.

### 3. *Tax Settlement*

Finally, the Court addresses RFC's claim for damages arising out of its settlement with the Tax Division. The Court admittedly strains to decipher the precise theory of contract liability RFC purports to articulate.

As a starting point, both parties appear to agree that they have never negotiated or executed a "formal written contract" during their eleven-year relationship. Def.'s SDMF ¶ 6. But beyond their ordinary purchase-by-purchase arrangements, RFC claims that they had an "understanding" throughout their dealings that Masterank "assumed responsibility for all added costs, fees[,] and taxes assessed or collectible on the gross receipt[s] of wax" sold to it.[16] *Id.* ¶ 6. In other words, Masterank agreed to pay for any Distribution Taxes owed on its shipments to RFC, to the extent it would be liable for any. According to RFC, Masterank breached that agreement when it failed to pay any Distribution Taxes RFC claims it owed under the PPGRTA, despite the Tax Division never having pursued the same. *See id.* ¶¶ 20–21. As a result of Masterank's breach, RFC claims that it was forced to pay $840,000 to the Tax Division for unpaid taxes. *See id.* ¶ 27.

---

[16] RFC has separately alleged that Masterank set "all in" prices for its wax products, meaning that Masterank's tax costs were effectively passed on to RFC throughout the course of their dealings. *See* Def.'s SDMF ¶ 8. However, RFC has pointed to no evidence of record demonstrating that RFC actually employed such a pricing practice or that it effectively overpaid on any of its wax orders. But even if Masterank's alleged pricing practices were substantiated by the record, they are nevertheless irrelevant to the theory of damages RFC has articulated. Repeatedly, RFC has made clear that it seeks the full amount of its $840,000 of the settlement payment—not because it overpaid on its wax orders—but because it ended up paying what it quite literally claims was Masterank's tax bill. *See* Def.'s Opp. Br. at 1 (stating that Masterank's non-payment "forced RFC to improperly to pay [sic] $840,000 on Masterank's behalf to the State of New Jersey"); *id.* at 15 ("RFC incurred a tax payment of $840,000 that Masterank properly owed[.]"); *see also id.* at 17 ("RFC received a delinquent tax bill . . . due to Masterank's failure to register with the State of New Jersey and remit PGRT.").

14

Even assuming that RFC's "understanding" can constitute a valid and enforceable contract, the Court fails to see how Masterank's payment or non-payment of any Distribution Taxes had any bearing on RFC's own liability for Use Taxes. *Compare* N.J. STAT. ANN. § 54:15B-3a (applying to the "gross receipts derived from the first sale of petroleum products"), *with id.* § 54:15B-3b (applying to the "consideration given or contracted to be given for [ ] petroleum products"). And despite the fact that Masterank's Motion repeatedly highlights this distinction, RFC's Opposition is silent on this point.

In lieu of an unambiguous explanation as to how precisely its damages flow from any purported breach of contract, RFC simply insists that Masterank was in fact subject to and failed to pay Distribution Taxes under the PPGRTA. But again, how exactly is RFC's tax liability in any way attributable to Masterank? The only remotely coherent glimpse RFC begins to provide is an unsupported assertion that the Tax Division could, and did, "impose the tax on RFC directly due to Masterank's failure to pay it." Def.'s SDMF ¶ 23. But the notion that the Tax Division somehow shifted Masterank's Distribution Tax liability to RFC is completely unsupported by both the record and the law. And as far as the Court can tell, RFC's liability for unpaid Use Taxes—regardless of the legal theory it attempts to invent—simply did not depend on the payment of Distribution Taxes.[17] This is to say that even if Masterank had been subject to and actually paid Distribution Taxes on its shipments, it appears that RFC would still be in the exact same position.

It is not lost on the Court that the "breach" and "damages" RFC attempts to articulate here are indistinguishable from the same obligations and liabilities it proposed to the Tax Division over

---

[17] *See Ross Fogg Fuel Oil Co. v. Dir., Div. of Tax'n*, 22 N.J. Tax 372, 380 (2005) ("The PGRT . . . is a tax that is required *not only* on the sale, *but also* on the importation and consumption of such [products]." (emphasis added)); *see also* 39 N.J. Reg. 4443(a) (stating that Use Tax was "not imposed upon a *company* subject to and [already] paying" Distribution Tax (emphasis added)).

15

seven years ago. The Court also does not overlook RFC's obvious effort to remove its tax bill from the purview of a state regulatory body and into a federal forum in the hopes of achieving a different outcome. But even accepting RFC's contract theory as it is presented, the Court still cannot find based on the record before it that Masterank has breached any agreement at all. Nor is the Court satisfied that the damages RFC purports to have suffered—settling its overdue taxes—can possibly be said to flow from any such breach.[18]

For these reasons, and for those set forth further above, Masterank's Motion for Summary Judgment as to RFC's counterclaim for breach of contract is granted in its entirety.

### C. Counterclaim II–Breach of Warranty

Next, the Court addresses RFC's counterclaim for breach of warranty. Here, RFC claims that Masterank's wax sales were subject "to an express warranty that Masterank would pay all taxes owed on the gross receipt of wax [sold] to RFC," and that Masterank breached that warranty by "failing to pay [taxes] . . . to the State of New Jersey." Def.'s Opp. Br. at 17. This is not a claim for breach of warranty.

Pursuant to UCC § 2-313, express warranties are created by any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or "description of the goods which is made part of the basis of the bargain." N.J. STAT. ANN. § 12A:2–313(1). Ignoring for a moment that Masterank never expressly promised to pay any taxes, RFC's counterclaim fails for the obvious reason that any such promise does not relate to the quality or conformity of the goods subject to the parties' bargain—paraffin wax. *See*

---

[18] However, as Masterank correctly points out, even if RFC could establish the essential elements of its claim, it would nevertheless be barred in significant part by the UCC's four-year limitations period—an argument that RFC, once again, neither acknowledges nor refutes in its Opposition. *See O'Neal v. Middletown Twp.*, No. 3:18-CV-5269, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019) (noting that the failure to "present any substantive argument in opposition" constitutes a concession and waiver). Regardless, the Court agrees with Masterank.

*Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 824 (3d Cir. 1999) (stating that an express warranty is created when "[t]he seller promises that the good sold will conform to some standard which may be established by a model, a level of quality, an assurance, a description or a list of specifications"). Accordingly, Masterank's Motion is granted.[19]

### D. Counterclaim III–Promissory Estoppel

The Court now turns to RFC's promissory estoppel counterclaim. Promissory estoppel is "a quasi-contract doctrine intended to apply when a party makes an otherwise unenforceable promise, but justice nevertheless requires that the court enforce the promise." *Starr Transit Co., Inc. v. Teamsters Union Loc. No. 35*, No. 21-14565, 2023 WL 4295821, at *9 (D.N.J. June 30, 2023) (quotation marks omitted); *see also Goldfarb v. Solimine*, 245 N.J. 326, 341 (2021) ("[P]romissory estoppel is not a 'suit based on the contract.' It is instead a suit based on [a party's] reasonable reliance, to his detriment, on [a] promise[.]"). To prevail on a claim for promissory estoppel, RFC must prove that (1) Masterank made a "clear and definite promise" to RFC; (2) Masterank made the promise "with the expectation" that RFC would rely on it; (3) RFC "in fact reasonably rel[ied] on the promise"; and (4) RFC suffered a detriment "of a definite and substantial nature . . . in reliance on the promise." *Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 666–67 (D.N.J. 2010) (quotation marks omitted).

Here, RFC articulates various theories of liability, all of which follow the same factual structure as its other counterclaims.[20] The first posits that Masterank "promised" to cover all

---

[19] Insofar as RFC's counterclaim is predicated on the allegedly defective shipment of wax in 2014, it is likewise time-barred for the reasons articulated in Part IV(B)(1), *supra*; *see also Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 763 (D.N.J. 2008) (citing N.J. STAT. ANN. § 12A:2–725) ("Under New Jersey law, the statute of limitations for a breach of warranty is four years and accrues when the breach occurs.").

[20] Here too, RFC has failed to offer any substantive legal arguments in defense of its promissory estoppel counterclaim. Rather than articulate how precisely the facts and evidence of record are sufficient to satisfy the elements of its claim, RFC merely regurgitates in a shotgun fashion a series of factual statements lifted from its Statement of

PPGRTA taxes associated with its sales of wax, and that RFC—in reasonable reliance on that promise—"did not pay any [taxes] to the State of New Jersey for over a decade." Def.'s Opp. Br. at 17. RFC's remaining theories merely recycle the same "promises" Masterank purportedly made surrounding the alleged credits and discounts previously discussed. All these theories, however, are factually and legally deficient.

As previously explained, the statements and arrangements RFC has pointed to do not evince a single "promise" at all, much less one sufficiently concrete to prevail on any of its theories of promissory estoppel. "Under New Jersey law, the *sine qua non* of a promissory estoppel claim is a clear and definite promise." *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (quotation marks omitted). When reviewing the evidence RFC points to, the Court simply cannot fathom a promise less "clear and definite" than an unspoken "understanding" concerning the parties' respective tax obligations, Def.'s SDMF ¶ 6, or a mere "discussion" concerning a customer's demand for pricing favors, *id.* ¶ 32. Without more, RFC cannot prevail on its counterclaim, and summary judgment must be entered. *See Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp.2d 409, 416 (D.N.J. 1998) (granting summary judgment on promissory estoppel claim for want of clear and definite promise) ("Details such as warranties, disclaimers, delivery, taxes, and allocation of risk of loss were not established nor even discussed."); *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002) ("Indefinite promises or promises subject to change by the promisor are not 'clear and definite' and cannot give rise to a claim for promissory estoppel.").

---

Disputed Material Facts. In light of the fact that it is RFC who is to bear the burden of proof at any trial, such a haphazard approach surely indicates that RFC has abandoned its claims here as well. *See Graceway Pharms., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566, 571 (D.N.J. 2010) ("Arguments absent substantial development are waived."); *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) (stating that arguments "consisting of no more than a conclusory assertion" lacking supporting citations "will be deemed waived"). But because RFC's counterclaim obviously fails, the Court will nevertheless address its merits.

### E. Counterclaim IV–Unjust Enrichment

A cause of unjust enrichment "requires proof that the defendants received a benefit and that retention of that benefit without paying would be unjust." *Ciser v. Nestle Waters North America Inc.*, 596 Fed. Appx. 157, 160 (3d Cir. 2015). Here too, RFC offers a single, conclusory argument that Masterank was unjustly enriched simply because "RFC paid $840,000 to the State of New Jersey to resolve the delinquent [tax] issue even though Masterank should have been the one paying it[.]" Def.'s Opp. Br. at 19. In its Motion, Masterank points out that it could not have been unjustly enriched because RFC did not pay any taxes Masterank owed; the Court agrees, and grants its Motion accordingly.[21]

## V. CONCLUSION

For all of the reasons articulated above, Masterank's Motion for Summary Judgment is granted.

Dated: December 30, 2023

/S/ 
KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

---

[21] To the extent RFC attempts to articulate an unjust enrichment theory based on Masterank's purported "promises" for credits and discounts, its Opposition fails to offer any substantive analysis warranting further consideration from the Court.